UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACK C. LEESON,<br><br>        Plaintiff,<br><br>        v.<br><br>TRANSAMERICA DISABILITY INCOME PLAN, AEGON USA LONG TERM DISABILITY PLAN, and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>        Defendants. | CASE NO. C04-471RSM<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of the Motion for Summary Judgment filed by defendant Transamerica Corporation Disability Income Plan. Oral argument was held on March 24, 2005, following which the Court directed the parties to supplement the briefing in this matter. For the reasons set forth below, the court has determined that defendant's motion shall be GRANTED.

FACTUAL BACKGROUND

Plaintiff Jack Leeson filed this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), alleging that his long-term disability benefits were wrongfully terminated. Plaintiff is a former employee of Transamerica Corporation, and a participant in two disability income plans. The basic plan ("LTD Plan"), funded through a Transamerica Disability Income Plan Trust, provided benefits based upon a participant's pre-disability salary up to a maximum of $150,000. Defendant Prudential is the claims administrator on this plan. The basic plan was

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

supplemented by a policy issued by Prudential to Transamerica which provides coverage for a participant's salary in excess of $150,000 ("Supplemental Plan"). Prudential is also the claims administrator of this Supplemental Plan.[1]

Plaintiff began working as a Regional Pension Manager for Transamerica in 1983. In December 1993, he was in an automobile accident that injured his neck, and also caused severe headaches. Plaintiff continued to work until June of 1996, and then applied for disability. On April 1, 1997, plaintiff was advised by Nancy Lurty, disability claims manager for Prudential Claim Services, that his claim for disability under the LTD plan was approved, subject to "continuing evaluation of [the] claim." He was informed in the letter that:

> *To continue to receive benefits from this Plan, you must be determined by the Plan Administrator (Prudential) to be totally and continuously disabled from an illness or injury. Totally and continuously disabled means that:*
>
> *1. During a period not to exceed 24 month of your disability, you are unable to perform the normal duties of your regular job; and*
>
> *2. After 24 months, you are unable to perform any work for which you are reasonable [sic] suited by training, education, or experience.*
>
> *You must be under the regular care of a licensed physician who is not a member of your family.*
>
> In addition:
>
> *If you are suffering from a mental or nervous disorder, alcoholism or drug abuse, or any secondary condition resulting from a mental or nervous disorder or from alcoholism or drug abuse, you will be considered disabled after 24 months only if you are confined to a hospital, remain under the care and direction of a medical provider, and continue to meet all other terms and conditions of the Plan.*

AEG 01235[2] (italics in original). Plaintiff was advised that a consultation would be arranged, and that

---

[1] Plaintiff and Prudential reached a settlement shortly before the oral argument, and Prudential has been dismissed from this action. Defendant AEGON Long Term Disability Plan was dismissed upon stipulation of the parties shortly after the oral argument. Transamerica Corporation Disability Income Plan is the sole remaining defendant in this action. Transamerica Corporation was acquired by an affiliate of AEGON USA in 1999, and further communication with plaintiff regarding the Transamerica LTD plan originated with the AEGON Welfare Benefits Committee ("AEGON").

[2] For identification of exhibits in the administrative record, the Court shall use the "Bates stamp" numbers on each document.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

"[s]hould new information be obtained that indicates you do not meet the definition [of disability], we will advise you accordingly, and close our handling of your claim at that time." *Id*.

The letter advised plaintiff that he would receive benefits of $12,929.49 per month under the LTD plan, less any offset for other benefits received, such as Social Security disability. Benefits would be paid effective December 21, 1996.

In October 1997, plaintiff saw neurologist Jacquelyn Weiss, M.D., Ph.D., for an independent medical evaluation ("IME"). Dr. Weiss examined plaintiff and reviewed his medical records. She states in her conclusions,

> Mr. Leeson states today that he cannot work because of chronic pain. The presence or absence of this is not something that I can confirm or deny. I can simply point out that there are no significant objective abnormalities aside from degenerative changes on the MRI scans which, in and of themselves, may or may not be accompanied by pain. The inconsistencies in neck motion suggest a degree of embellishment. It is quite common in individuals with severe and chronic pain complaints to have an underlying psychosocial abnormality, and, in my opinion, this needs to be further elucidated with an independent psychiatric examination.
>
> Based upon objective findings, I do not feel that Mr. Leeson would be precluded from his job. It is based on subjective pain complaints that he does not work. Given his age and some degree of degenerative change, I would restrict him to light or sedentary work with lifting no more than 35 pounds on an occasional basis.
>
> With respect to further treatment, I would comment only that Mr. Leeson has had a great abundance of evaluation and treatment, none of which have apparently been helpful. I have concerns about over-medication with respect to his headaches and feel that it is inappropriate for him to take Percocet on a regular basis as well as anti-inflammatories. These may well contribute to headache.
>
> Based upon my comments above, at least in terms of objective findings, he would be able to work at the present time.

Dr. Weiss report, dated October 10, 1997, AEG 00600-00608.

Prudential then requested a file review by a disability management specialist, Gale Brown, M.D. Dr. Brown found that there is "simply no objective basis to explain the claimant's prolonged disability and perceived incapacity. From the records, it appears that the claims [sic] subjective complaints are largely disproportionate to any objective medical data presented." Dr. Brown concluded that plaintiff's disability appeared to be based "on subjective complaints of pain without associated objective data to support this position." Report of Gale Brown, M.D., AEG 01147.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 3

On June 22, 1998, Prudential's Disability claims Manager Nancy Lurty advised plaintiff by letter that, under the LTD plan, a new more restrictive definition of "disability" applied after 24 months. The letter stated that "[a]lthough we are presently continuing your benefits, we do not waive our rights to evaluate your claim under the more restrictive definition of Total Disability at a later date." AEG 01163.

Plaintiff's claim file was reviewed in May of 2001 by Prudential's medical director, Robert MacBride, M.D. After reviewing all of plaintiff's medical records, Dr. MacBride noted that "the work absence appears to have originated on June 24/96 when Dr. Mitchell recommended '6 months off work' due to chronic pain and medication over-use and proceeded to disable the clmt." AEG 00783. He noted that a diagnosis of "no work capacity" and "total disability for lifetime" was provided by a dentist, Dr. Gordon, not by a physician. *Id*. On the other hand, Dr. MacBride noted that plaintiff's internist, David Tauben, M.D., painted a "picture of a claimant with a fixed belief system as well as acknowledged iatrogenesis." *Id*. In November of 1999, Dr. Tauben noted "severe deconditioning and strong somatic focus and coping largely on the basis of pharmaceuticals rather than physical activation." *Id.* A year later, Dr. Tauben described plaintiff's "tremendous polypharmacy in a patient with intense illness conviction." *Id*. DR. MacBride explained Dr. Tauben's notes as indicating that plaintiff was "drug-dependent and focused and not participating in effective rehabilitation." *Id*.

Based on these and other indications in the medical record that plaintiff was seeing a great many doctors and taking a great number of drugs, Dr. MacBride found that plaintiff had been documented by his own doctors as having "his problems compounded by seeking assistance from a host of physicians in an increasing array of polypharmacy." AEG 00784. He concluded that, given the duration of plaintiff's disability claim and its complexity, combined with "the apparent intensity of the claimant's belief system reinforced by his polypharmacy," a meeting should be held to discuss the claim and its "major iatrogenic component." *Id*.

Prudential then referred the claim file to disability specialist Gale Brown, M.D., for an update to the previous report. Dr. Brown reviewed and summarized the records of six treating physicians seen by plaintiff between January of 1997 and February of 2001, together with the original letter from Dr.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

Mitchell recommending that plaintiff take six months off work after the automobile accident. AEG 01014 to AEG 01018. Dr. Brown took particular note of plaintiff's several extended trips to Hawaii during this time. AEG 01018. He also quoted extensively from Dr. Tauben's records, particularly from plaintiff's February 8, 2000, examination, after which Dr. Tauben wrote,

> Chronic pain syndrome, neck predominates over back; several level degenerative disease but impairment out of proportion to condition and certainly level of disability disproportionate to evidence[d] pathology. Huge amount of amplification of symptoms . . .

AEG 01018, quoting AEG 00807. Dr. Brown found in these medical records no basis to alter his opinion, stated earlier, that plaintiff had the functional capacity to perform any occupation on a full-time basis, at the least on a light physical capacity level. AEG 01021. He also stated that the opinion of dentist Dr. Gordon, that plaintiff was 100 per cent disabled, could not be substantiated by any objective medical evidence. *Id*.

Two weeks later, on July 2, 2001, Prudential sent a letter to plaintiff, informing him that he no longer met the requirements for benefits under the LTD policy. AEG 01009. After quoting plan language[3] defining disability, and listing plaintiff's medical conditions, the letter stated,

> We have reviewed your claim and determined that the medical documentation does not support a physical impairment which would prevent you from returning to work. A recent file review indicated you can perform sedentary to light level work, your own occupation is classified as sedentary to light level depending on the industry.
>
> You may have an impairment from your psychological condition, however the maximum benefits allowable for psychological impairment have already been paid under the Benefit Limitation as noted above.

AEG 01011. The letter also advised plaintiff that he had the right to appeal the decision by stating the appeal in writing, identifying the issues appealed, and presenting any additional evidence he wished to be considered. *Id*.

---

[3]The language quoted was actually from the supplemental plan, not the LTD plan. There is a difference in the limitation on mental conditions. The LTD plan places a 24-month limitation on benefits in the case of a plan participant "whose disability is caused by a mental or nervous disorder, alcoholism, or drug abuse, or any secondary condition resulting from a mental or nervous disorder, alcoholism, or drug abuse. . . ." AEG 00009. The denial letter, however, used language from the supplemental plan, which limits the benefit period to 24 months for disability that "is caused at least in part by a mental, psychoneurotic or personality disorder." AEG 01010.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 5

Plaintiff wrote back and argued that he was 58 ½ years old, under a doctor's care, and had been found disabled for the purpose of receiving Social Security disability benefits. AEG 00744. He attached supporting statements from his dentist and his osteopath, as well as from Dr. Tauben. Prudential, in response, referred the file to psychiatrist Marcia Scott, M.D., for review. Her report, dated October 12, 2001, states that

> [t]hese providers and the reviewers agree his primary problem is a pain syndrome (FM), which they note would not in itself, be disabling if it were not for his altered pain perception. They note failure to actively participate in physical and mental rehabilitation and repeatedly point out psychological patterns—excessive care and disability seeking behaviors and current and longstanding patterns of bodily and illness preoccupations that resist medical reassurance.
>
> . . . .
>
> His own providers and the reviewers have consistently recommended psychiatric evaluation thereby documenting the presence of ongoing, untreated personality and psychiatric problems.
>
> There is, in the documents provided, no formal psychiatric evaluation that details Mr. Leeson's mental functioning or his adult personality patterns and formally document criteria for a DSMIV mood and personality disorder. However, in these records, his own physicians and reviewers point out the presence of criteria consistent with mood disorder and associated personality defenses. They indicate that these conditions, well known to alter pain perception, in his case alter his perception of FM pain and lead to exaggeration of his pain symptoms as well as to care seeking, illness focused behavior that disables him and seriously compromises his quality of life. This is entirely consistent with both the pain and Fibromyalgia literature.

AEG 00597-00598. Dr. Scott concluded that

> [t]here is sufficient evidence in the available documentation as well as wide agreement amongst Mr. Leeson's own physicians to conclude that Mr. Leeson suffers from symptom and behavior patterns consistent with somatization disorder and an underlying, persistent, active and disabling affective illness that interferes with his ability to work or get care and destroys the quality of his life.

AEG 00598.

In a letter dated October 19, 2001, Prudential denied plaintiff's request for reconsideration of the decision to terminate his benefits. The letter explained that further benefits were denied both due to the 24-month limitation on mental or psychological disorders, and because "the medical evidence does not support a physical impairment that would render you unable to perform the duties of a sedentary of light duty occupation." AEG 00575. As to plaintiff's contention that he should be considered disabled because the Social Security Administration considered him so, the letter also noted that if plaintiff had

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

been receiving Social Security disability benefits, "an overpayment on your LTD claim may have occurred, which needs to be reimbursed back to Prudential." *Id*. The letter also advised plaintiff of his right to again appeal the decision. AEG 00576.

At this point, plaintiff sought help from counsel. His attorney sent a letter to both Prudential and to the AEGON USA Welfare Benefits Committee, as plan administrator for the LTD plan, asking that they "accept this letter as Mr. Leeson's second appeal of your decision denying him benefits under this LTD policy." AEG 0523. The AEGON committee sent plaintiff's file to Sheila Sawyer, M.D., for an independent review. In her nine-page report, Dr. Sawyer noted that

> Mr. Leeson's chronic neck pain and fibromyalgia appear to have improved over the last couple of years. Statement in the record of activities such as "he climbed six flights of stairs, and walked one hour on the treadmill," (12/8/99), "while in Hawaii, he was working on the plumbing behind a toilet in his father's house, he tweaked something and the neck pain flared," (2/8/00), "he tries to walk one mile daily," ( 2/23/00), and "he did some home repairs on his condo, some hiking and traveling while in Hawaii," (6/4/00) indicate a moderate level of physical functioning. In addition, traveling in an airplane to and from Hawaii requires an upright position for several hours, a big improvement over statement 12/12/96 where he could only be up for 1.5 hours.
>
> Finally, there is the "illness conviction" reported by his primary treating physician, Dr. Tauben. References in the file include "Mr. Leeson has been seeing a multitude of providers and is sent here to begin to reel in the multitude of treating physicians in an effort to reduce some of his illness conviction," and "the degree of his illness conviction is marked and I believe reinforced by a multitude of providers. We must challenge his current conviction that he is so sick that this many doctors are what is needed to keep him going." (9/18/98) On 11/9/99, Dr. Tauben notes "all this is complicated by severe deconditioning and a strong somatic focus, coping largely on pharmaceuticals rather than a physical activation program."

AEG 00518. Dr. Sawyer concluded,

> In my medical opinion, Mr. Leeson's physical capacity would not be disabling were it not for his altered pain perception. Based on self-reported activities, the results of physical and neurological exams, lab and imaging, I believe Mr. Leeson is capable of performing the duties of light work.

AEG 0519.

Prudential sent a letter denying plaintiff's second appeal on June 10, 2002. The AEGON committee sent its own letter on June 19, 2002, stating that

> [t]he basis for the appeal denial is as follows:

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

The evidence submitted by you in this appeal and the additional medical records and reports obtained in the appeal, do not support a conclusion that your client is qualified to receive benefits under the Plan. Qualification for Benefits is defined in the Plan SPD as:

> "**After 24 months:** You will continue to be disabled if you are unable to perform the essential functions of any job for which you are reasonable [sic] suited by education, training, experience, and physical ability. If, at the end of 24 months or at any point thereafter it is determined that you could, with rehabilitation or training, become able to perform the essential functions of any job (which pays at least 80% of your predisability covered compensation), you will no longer be considered disabled under the terms and provisions of the plan.

Further, the following limitation is found in the Plan SPD:

> If you are suffering from a mental or nervous disorder, alcoholism or drug abuse, or any secondary condition resulting from a mental or nervous disorder or from alcoholism or drug abuse, you will be considered disabled after 24 months only if you are confined to a hospital, remain under the care of and direction of a medical provider and continue to meet all other terms of the plan.

AEG 00498-499. This decision was designated as a final one, triggering plaintiff's right under ERISA to file suit in federal court. AEG 005-4. A subsequent appeal a year later, through different counsel, was summarily rejected due to the finality of the June 19, 2002 decision. AEG 00738. As plaintiff has settled with Prudential, this denial by the AEGON committee is the only issue remaining in this case.

## LEGAL ANALYSIS

I. <u>Standard of Review</u>

In actions to recover benefits under an ERISA plan, the Court employs a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan vests the administrator with such discretionary authority, the Court may ordinarily review the administrator's decision only for abuse of discretion.[4] *Atwood v. Newmont Gold Co.*, 45 F. 3d 1317, 1321 (9th Cir. 1995); quoting *Firestone*, 489 U.S. at 115.

Plaintiff does not dispute that each of the plans here confers substantial discretion on the

---

[4] The "abuse of discretion" standard differs from the oft-stated "arbitrary and capricious" standard in name only. *Atwood*, 45 F. 3d at 1321. The Court shall use the term abuse of discretion here.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8

administrator.  However, plaintiff argued at the hearing that this standard is altered when there is a conflict of interest present.  "The degree of judicial deference associated with this standard of review may . . . be affected by factors such as conflict of interest." *Lang v. Long-Term Disability Plan*, 125 F. 3d 794, 797 (9th Cir. 1997).   Plaintiff contended that such conflict of interest exists here, in that Prudential both funds and determines benefits under the supplemental plan.   However, plaintiff has settled with Prudential and dismissed this defendant, and the supplemental plan is no longer at issue in this case.

As to the LTD plan, plaintiff argues that Prudential's conflict of interest also affected Transamerica's  decisions in his case, in that Transamerica simply ratified decisions actually made by Prudential.  However, plaintiff has produced no evidence to support this assertion, or otherwise to support his claim to a heightened standard of review.  Even if Prudential's apparent conflict of interest could somehow be imputed to Transamerica, the presence of an apparent conflict does not automatically heighten the standard of review. *Bendixen v. Standard Insurance Company*, 185 F. 3d 939, 943 (9th Cir. 1999).  Only serious conflicts of interest heighten the scrutiny.  *Id*.   To establish a serious conflict, the plaintiff must produce "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood*, 45 F. 3d at  1323.

The Ninth Circuit has provided a "short list" of the kinds of evidence a beneficiary may provide to make a *prima facie* showing of an administrator's breach of fiduciary duty. *Sabatino v. Liberty Life Assurance Company of Boston, et al*, 286 F. Supp. 2d 1222, 1230 (N.D.Cal. 2003).  These include "inconsistency in the administrator's dealings with the beneficiary", and "reli[ance] upon an improper definition of disability in processing the beneficiary's claim." *Id*., quoting *Regula v. Delta Family-Care Disability Survivorship Plan*,  266 F. 3d 1130, 1146 (9th Cir. 2001);  *judgment vacated on other grounds*, 529 U.S. 901 (2003).   Plaintiff would have the Court find that the change from an award of benefits in 1996 to denial of benefits in 2001 was just such an inconsistency.  This argument is without merit.  Plaintiff was advised in 1998 that after twenty-four months, a more restrictive definition of disability applied, and that Prudential was continuing to review his eligibility as new evidence was

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 9

provided. The fact that the benefits determination changed after review of all the updated medical evidence is not an "inconsistency" in the administrator's dealings with plaintiff.

Plaintiff also argued at the hearing that defendants' failure to provide to him a copy of the applicable LTD plan at his request constituted a breach of fiduciary duty that would entitle him to *de novo* review. It appears that the plan that was provided to plaintiff's counsel was the 1997 LTD plan, effective in 2001 when his claim to benefits was denied, not the LTD plan in place in 1996 when plaintiff's disability began. This did not constitute a breach of fiduciary duty, as the later plan was the correct one to apply to the denial of benefits. For non-vested benefits, such as medical and disability benefits, "the denial of ERISA benefits is judged under the standard of the plan in effect at the time the benefits are denied." *Geiger v. Hartford Life Insurance Company*, 348 F. Supp. 2d 1097, 1112 (E.D.Cal. 2004); citing *Grosz-Salomon v. Paul Revere Life Insurance Company*, 237 F. 3d 1154 (9th Cir. 2001).

As plaintiff has produced no evidence of breach of fiduciary duty or other improper action by the AEGON committee, he has not demonstrated an entitlement to *de novo* review.

II. <u>Application of the Abuse of Discretion Standard in ERISA Review</u>

Under an abuse of discretion standard, a decision by an ERISA administrator "will not be disturbed if reasonable." *Firestone Tire & Rubber Co.*, 489 U.S. at 111. An ERISA administrator is entitled to substantial deference, so long as the administrator has "some reasonable basis for its decision denying benefits." *Zavora v. Paul Revere Life Insurance Co.*, 145 F. 3d 1118, 1123 (9th Cir. 1988). "Nearly any reasonable basis will do." *Alford v. DCH Foundation Group Long-Term Life Insurance Company of America*, 144 F. Supp. 2d 1183, 1212 (C.D.Cal. 2001). In the ERISA context, even decisions "directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Taft v. Equitable Life Assurance Co.*, 9 F. 3d 1469, 1473 (9th Cir. 1993). It is not an abuse of discretion for the administrator to decline to consider a finding by the Social Security Administration that the plaintiff is totally disabled. *Madden v. ITT Long Term Disability Plan*, 914 F. 2d 1279, 1284 (9th Cir. 19990); *cert. denied*, 498 U.S. 1087 (1991). Only where the administrator's decision was "so

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 10

patently arbitrary and unreasonable as to lack foundation in factual basis" may the Court find an abuse of discretion. *Oster v. Barco of California Employees' Retirement Plan*, 869 F. 2d 1215, 1218 (9th Cir. 1988). It is also an abuse of discretion of the plan administrators "to render decisions without any explanation, or to construe provisions of the plan in a way that conflicts with the plain language of the plan." *Bendixon v. Standard Insurance Co.*, 185 F. 3d 939, 944 (9th Cir. 1999); citing *Eley v. Boeing Co.*, 945 F. 2d 276, 279 (9th Cir. 1991).

The AEGON committee denied plaintiff's final appeal because it determined that he had exceeded the twenty-four month limitation on coverage for mental conditions as provided in the LTD plan. As shown in the factual recitation above, there is substantial medical evidence in the record to support this decision. Dr. Weiss, who saw plaintiff very early on, stated that while she could neither confirm nor deny the chronic pain that plaintiff claimed, she could find no objective basis for it. AEG 00607. She also noted discrepancies between plaintiff's self-reported limitations and his physical appearance. In addition to "significant pain behavior . . . alternating with periods of bland, pleasant-looking affect" and "inconsistencies of neck motion" , Dr. Weiss reported that plaintiff "does have some degree of retained muscular conditioning. He is quite tanned . . . " AEG 00605-00607. Although plaintiff attempted to explain the tan as "yellowing from his thyroid/pituitary disease", Dr. Weiss noted that "a tan line at the belt line is in evidence." AEG 006-5.

Subsequent to Dr. Weiss's observations, Dr. Tauben, plaintiff's treating physician, noted a "huge amount of amplification." AEG 00807. Dr. Brown, in reviewing the file, found only subjective complaints of pain with no objective data to support that degree of pain. Dr. MacBride noted plaintiff's "strong somatic focus", "tremendous polypharmacy", and "acknowledged iatrogenesis." AEG 00783. Dr. Sawyer concluded that plaintiff's physical capacity would not be disabling "were it not for his altered pain perception." AEG 00519. Dr. Scott, the psychiatrist who reviewed plaintiff's file in October 2001, concluded that plaintiff suffered from somatization disorder. AEG 00598.

All of these medical opinions support the administrators' conclusion that plaintiff's disability was caused, not by any physical impairment, but by his exaggerated perception of pain. Plaintiff contends that

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 11

to reach this decision, the administrator had to disregard the letter from Dr. Tauben, dated August 20, 2001, in which this treating physician explained that while plaintiff's pain complaints were disproportionate to his objective impairments, "the disorder of 'chronic pain' is a disability producing condition even if the pain percept exceeds the pain generator from the physician's perspective." AEG 00410. This letter stands in contrast to Dr. Tauben's pre-denial diagnosis and treatment notes, in which he repeatedly expressed concern over plaintiff's mood disorder, amplification of symptoms, strong somatic focus, preoccupation with morbid issues, reliance on pharmaceuticals, and "intense illness conviction." AEG 00797, 00800, 00807, 00809. Dr. Tauben also noted that plaintiff consistently felt better when he was in Hawaii. AEG 00802. Plaintiff contends that the administrators should have contacted Dr. Tauben to "clarify his opinions." However, it was not an abuse of discretion for the administrators to look to the treatment notes, which speak for themselves, rather than to a rehabilitative letter written later and at plaintiff's request. Where, as here, there is some reasonable basis for the administrators' decision, even if that decision is contrary to some evidence in the record, that decision is entitled to substantial deference. *Zavora*, 145 F. 3d at 1123; *Taft*, 9 F. 3d at 1473.

Plaintiff also contends that the administrators ignored his diagnosis of fibromyalgia. However, a diagnosis of fibromyalgia does not automatically lead to a determination of disability:

> With a condition such as fibromyalgia, where the applicant's physicians depend entirely on the patient's pain reports for their diagnoses, their *ipse dixit* cannot be unchallengeable. That would shift the discretion for the administrator, as the plan requires, to the physicians chosen by the applicant, who depend for their diagnoses on the applicant's reports to them of pain. That the administrator ultimately rejects the applicant's physicians' views does not establish that it 'ignored' them.

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F. 3d 869, 878 (9th Cir. 2004).

In plaintiff's case, it was only Dr. Gordon, a dentist, who expressed the opinion that his fibromyalgia was disabling. Other treating physicians, such as Dr. Tauben, equated fibromyalgia with chronic pain syndrome rather than considering it a separate and disabling disorder. The plan administrators did not abuse their discretion in declining to give weight to Dr. Gordon's opinion, because he is not a physician. Even if Dr. Gordon had spoken as a physician, the plan administrators would have been within their discretion in rejecting his disability diagnosis on the basis of contrary evidence in the

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 12

file. *Id*. In so doing, they acknowledged that plaintiff had a number of conditions, such as fibromyalgia, chronic pain syndrome, TMJ, diabetes, and migraine headaches. AEG 00500. On the basis of the medical reports of Drs. Brown, Sawyer, Scott, Tauben, and others, the plan administrators determined that it was plaintiff's magnification of these conditions by his emotional factors that caused his disability, not the underlying conditions themselves. This is not a determination on which the Court may substitute its judgment for that of the administrators. *Voight v. Metropolitan Life Insurance Co.*, 28 F. Supp. 2d 569, 576 (C.D.Cal. 1998).

Plaintiff argues that he is entitled to relief because the denial of his benefits was inconsistent with the plan language. As noted above, the initial denial letters from Prudential quoted language from the supplemental plan, which placed a twenty-four month limitation on benefits paid for disability caused "at least in part" by a mental, psychoneurotic, or personality disorder. The final denial letter, from the AEGON Welfare Benefits Committee, quoted language from the summary plan description for the LTD plan, describing a twenty-four month limitation on benefits if the claimant is suffering from a mental or nervous disorder, or any secondary condition "resulting from" a mental or nervous disorder. AEG 00499. Plaintiff makes several arguments regarding this discrepancy, such as that the administrator applied the wrong standards in denying his claim, and that the initial denial letters did not properly advise him of the reason for denial. None of these arguments has merit.

Any inadequacies in the denial letters from Prudential are not relevant to the motion now before the Court, because Prudential has been dismissed from the action. The letter of denial from the AEGON committee clearly applied the correct standard, namely that benefits were being denied for a disability "resulting from" a mental or nervous disorder, pursuant to the twenty-four month limitation in the LTD plan. The administrators' determination that plaintiff's disability resulted from a mental condition—his exaggerated perception of pain from an otherwise non-disabling condition—is supported by substantial evidence in the medical record. Dr. Tauben's note regarding plaintiff's "intense illness conviction" and his "strong somatic focus" are but two of many examples.

Plaintiff also argues that the AEGON committee simply "rubber-stamped" the decisions made by

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 13

Prudential, rather than conducting an independent review of plaintiff's claim.  There is no evidence in the record to support this; indeed the independent review conducted by Dr. Saywer indicates otherwise.  The AEGON committee quoted extensively from Dr. Sawyer's report in the final denial letter to plaintiff. AEG 00500-00501.

Finally, plaintiff argues that the administrators violated the ERISA mandate of full and fair review by refusing to consider additional evidence of disability offered by counsel in August 2003, more than a year after the AEGON committee finally denied plaintiff's appeal.   This argument is also without merit.  The AEGON letter clearly stated that it was a final decision, triggering plaintiff's right to file this lawsuit in federal court under ERISA.   Plaintiff has cited to no provision in ERISA to support his contention that he was provided anything less than full and fair review by the AEGON committee.

## CONCLUSION

Where the decision to grant or deny ERISA benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual test of summary judgment, such as whether a genuine issue of material fact exists, do not apply. *Bendixen*, 185 F.3d at  942 (9th Cir. 1999).  After reviewing this record for abuse of discretion, the Court finds none.   The AEGON plan administrator has established that there was a reasonable factual basis for its decision, and that it neither rendered a decision without explanation, nor construed any provision of the LTD plan in a way that conflicts with the terms of that plan.  Accordingly, defendant Transamerica's motion for summary judgment is GRANTED, and this action is DISMISSED.

Dated this 13th day of February 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY JUDGMENT - 14