UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACK C. LEESON,<br><br>        Plaintiff,<br><br>        v.<br><br>TRANSAMERICA DISABILITY INCOME PLAN, AEGON USA LONG TERM DISABILITY PLAN, and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>        Defendants. | CASE NO. C04-471RSM<br><br>ORDER ON MOTION TO DISMISS FOR LACK OF JURISDICTION |

Plaintiff filed this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), alleging that his long-term disability benefits were wrongfully terminated. The case was dismissed by this Court on a motion for summary judgment. That ruling was vacated by the Ninth Circuit Court of Appeals, and the case was remanded for further consideration by this Court under a *de novo* standard of review. The Ninth Circuit Court of Appeals determined that *de novo* review is required in this case because "the procedural violations in the Plan's letters terminating Leeson's benefits were 'so flagrant as to alter the substantive relationship between the employer and employee.'" Dkt. # 79-2, p. 3; quoting *Abatie v. Alta Health & life Insurance Co.*, 458 F. 3d 955, 971 (9th Cir. 2006) (en banc).

The matter is now before the Court for consideration of defendants' motion to dismiss for lack of subject matter jurisdiction. Dkt. # 93. Defendants assert that relevant plan documents reviewed by counsel after the case was remanded to this Court reveal that plaintiff was on unpaid leave at the time he submitted his claim for disability benefits, and therefore he was a participant under the terms of the plan. According to defendants, since plaintiff was not a participant as defined in the benefit plan, he lacks

ORDER ON MOTION TO DISMISS - 1

standing to challenge the termination of his benefits under ERISA.  Defendants contend that since this argument goes to the Court's subject matter jurisdiction, it may be raised at any time, including after remand.

Plaintiff has opposed the motion, but neither side has requested oral argument.   For the reasons set forth below, the Court shall grant the motion and dismiss the action.

## BACKGROUND

The parties and the Court are familiar with the history of this case, and it need only be briefly summarized here.   Plaintiff is a former employee of Transamerica Corporation.  While he was employed, he was a participant in two disability income plans, a basic plan ("LTD Plan"), and a supplemental plan which provided coverage for salary in excess of $150,000 ("Supplemental Plan"). Plaintiff did not participate in a Short-Term Disability ("STD") Plan.

Plaintiff began working as a Regional Pension Manager for Transamerica in 1983.  In December 1993, he was in an automobile accident that injured his neck, and also caused severe headaches. Plaintiff continued to work until June of 1996, and then took a leave of absence.  He could not apply for disability benefits at that time, as the LTD policy required that an applicant be continuously disabled for six months before coverage would begin. In January 1997, after six months, plaintiff  applied for disability benefits. He was advised on April 1, 1997, that his claim for disability benefits under the LTD plan was approved, subject to continuing evaluation of his claim.  Four years later, on July 2, 2001, after internal reviews of his file which are detailed in the Court's prior Order,  plaintiff was advised that he no longer met the requirements for benefits under the LTD policy.  Dkt. # 66.

Plaintiff filed this action to challenge the termination of his benefits.  This Court granted defendants' motion for summary judgment on plaintiff's claims on February 13,  2006.  Dkt. # 66.  As noted above, the Ninth Circuit Court of Appeals vacated that decision, and remanded for *de novo* review.  Dkt. # 78.  However, before the Court can conduct that review and consider the merits of plaintiff's claim, it must consider the question of subject matter jurisdiction which has been raised by defendants.

Resolution of that question turns on the nature of the leave of absence that plaintiff took from June 24, 1996 to January 1997, when he applied for LTD benefits.  Defendants contend that under the relevant

ORDER ON MOTION TO DISMISS - 2

plan, an employee on unpaid leave would be ineligible to participate in the LTD plan, and therefore would lack standing under ERISA to challenge the termination of benefits. Plaintiff has asserted several defenses against the jurisdictional argument which will be addressed below.

## ANALYSIS

In order to have standing to bring a civil action under ERISA, a plaintiff must be a participant in or a beneficiary of an ERISA plan. *Burrey v. Pacific Gas and Electric Co,* 159 F. 3d 388, 392 (9th Cir. 1998)*; citing* 29 U.S.C. § 1132(a)(1)(B). The applicable statute defines a participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan. . . ." 29 U.S.C. § 1002(7). A former employee may qualify as a participant under ERISA if he has "a reasonable expectation of returning to covered employment or . . . a colorable claim to vested benefits." *Burrey*, 159 F. 3d at 392, *quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Defendants contend that plaintiff was not a "participant" under the relevant plan when he applied for benefits in January 1997, because he was on unpaid leave at that time.

Section 3 of the January 1, 1997 Restatement of the Plan ("1997 Restatement"), which appears in the administrative record (Dkt. # 108), governs eligibility and participation in the LTD plan. Under the heading "Participation for Long-Term Disability Benefits" the Plan provided that "[e]ach individual who is an Eligible Employee on January 1, 1997, automatically shall be eligible to elect to become a Long-Term Participant on January 1, 1997. 1997 Restatement, § 3.3.1, Dkt. # 108, p. 18. An "Eligible Employee" is defined in Section 2 of the plan as "an active salaried employee of an Employer. . . ." 1997 Restatement, § 2.10(a), Dkt. # 108, p. 10.

Under the heading "Suspension of Long-Term Participation" the 1997 plan states,

> [i]f an Eligible Employee is on an unpaid leave of absence, his or her status as a Long-Term Participant shall be suspended and he or she shall be ineligible for Long-Term Disability Benefits. Upon the individual's return to Active Employment at his or her Employer, his or her status as a Long-Term Participant shall resume, subject to the provisions of this Section 3.3. Notwithstanding the foregoing, and subject to Section 3.3.5, if an Eligible Employee is on an unpaid leave of absence, his or her status as a Long-Term Participant shall not be suspended provided that he or she makes monthly after-tax contributions to the Trustee. The monthly amount of each such payment shall be based on the payroll deductions that otherwise would have been made for the payroll periods in accordance with his or her Pre-Tax Contribution election under the Flex Plan for the Long-Term Disability Option he or she elected. . . . Such payments by the Long-Term Participant shall be after-tax contributions that are not made pursuant to an election under section 235 of the Code.

ORDER ON MOTION TO DISMISS - 3

1997 Restatement, § 3.3.4, Dkt. # 108, p. 19.

Section 3.3.5, to which this section 3.3 is subject, is titled "Termination of Long-Term Participation" and states,

> An Eligible Employee who has become a Long-Term Participant shall remain a Long-Term Participant until the earliest of the following dates:
>
> . . . .
>
> (b) The date next following the end of the period (1) for which the last Employer Payment is made by an Employer on account of the Long-Term Participant's membership, or (2) when a Long-Term Participant has stopped making contributions required under Section 3.6 for the Long-Term Disability Option he or she elected;
>
> . . . .
>
> (d) the date on which he or she ceases to be an Eligible Employee. . . .

1997 Restatement, § 3.3.5, Dkt. # 108, p. 19.

Plaintiff began his period of leave in June 1996, so the Plan in place at that time would govern the terms of his leave. The January 1, 1993 Restatement of the Plan (1993 Restatement)[1] was substantially similar to the 1997 Restatement, for example defining an "eligible employee" as "a full time active salaried employee of a participating Employer." 1993 Restatement, § 2.9(a); Declaration of David Levin, Dkt. # 94, Exhibit 5. Under the heading "Termination of Enrolled Membership" the 1993 Restatement provided,

> An Eligible Employee who has become an Enrolled Member shall remain an Enrolled Member until the earliest of the following dates:
>
> . . .
>
> (b) The date next following the end of the period for which the last contribution payment is made by a participating Employer on account of the Enrolled member's membership;
>
> . . . .
>
> (d) The date on which he or she ceases to be an Eligible Employee;
>
> . . . .
>
> **In addition, while the Enrolled Member is on an unpaid leave of absence, his or her status**

---

[1] This 1993 Restatement of the Transamerica Disability Income Plan is titled "Non-Flexability 125 Companies." Plaintiff states in his Declaration that he was enrolled in a Flexability Plan. Declaration of Jack Leeson, Dkt. # 96, ¶ 3. However, while plaintiff has argued that this plan was produced too late in these proceedings, nowhere has he asserted that it is the wrong plan, or that the terms of the Flexability Plan were different.

ORDER ON MOTION TO DISMISS - 4

> **as an Enrolled Member shall be suspended and he or she shall be ineligible for Disability Income Benefits.** Upon the individual's return to active employment at his or her participating Employer, his or her status as an Enrolled member shall resume, subject to Sections 3.2.3 and 3.2.4.

*Id*., § 3.2.6 (emphasis added).   This 1993 Restatement does not appear to contain a provision for avoiding suspension by maintaining monthly contributions during a period of unpaid leave.

Defendants have not provided a Summary Plan Description ("SPD") for this 1993 Restatement, but have provided a December 1, 1996 SPD.  With respect to unpaid leave, the December 1, 1996 SPD states, "[i]f you are on an unpaid leave, you may continue to be enrolled in the plan, provided you make the necessary (after tax) employee contributions on a monthly basis."  Declaration of David Levin, Dkt. # 94, Exhibit 4, p. 7.

Under these plans, and assuming there was a suspension-avoidance provision in the applicable plan in June 1996, plaintiff would only continue to be an enrolled member of the plan while on leave through the end of 1996 if he continued to make his monthly contributions.  If he was not an enrolled member on January 1, 1997, he would not be an "eligible employee" and therefore would not be a "participant" under the terms of the 1997 Restatement, which controls his eligibility for benefits.  If he was not a "participant" under the 1997 Restatement, he does not have standing under ERISA, and this Court lacks jurisdiction of the matter.  *Burrey v. Pacific Gas and Electric Co,* 159 F. 3d at 392.

In opposing the motion to dismiss, plaintiff argues, in essence, that by their acceptance of plaintiff's January 1997 claim for disability benefits and payment of benefits until 2001, defendants are estopped from raising the jurisdictional issue, or are barred from raising it by laches.  This line of argument is unavailing.  The plaintiff who has invoked the jurisdiction of the Court bears the burden of demonstrating there is subject matter jurisdiction. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1984) *cert. denied*, 466 U.S. 958 (1984).  Challenges to a court's subject matter jurisdiction may be raised at any time and are not subject to implicit waiver. *See* Rule 12(h)(3), Fed. Rules of Civ.Proc.;  *Augustine v. United States*, 704 F.2d 1074, 1075 n. 3 (9th Cir.1983).

Nor may estoppel prevent an objection to subject matter jurisdiction, because such an objection may be raised at any time, by any party or by the Court.  *Intercontinental Travel Marketing v. F.D.I.C.*, 45 F. 3d 1278, 1286 (9th Cir. 1995); citing  *Brady Development Corp. v. Resolution Trust Corp.,* 14 F.3d 998, 1007 (4th Cir. 1994) ("The doctrines of waiver and estoppel do not apply to subject matter

ORDER ON MOTION TO DISMISS - 5

jurisdiction determinations"); *Bueford v. Resolution Trust Corp.,* 991 F.2d 481, 485 (8th Cir. 1993)("the [defendant] cannot, by its own conduct or otherwise, be estopped from raising the issue of subject matter jurisdiction"); *Feise v. Resolution Trust Corp.*, 815 F.Supp. 344, 345 (C.D.Cal.1993) (subject matter jurisdiction cannot be waived) (*citing Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)); *Glenborough N.M. Assoc. v. Resolution Trust Corp.*, 802 F.Supp. 387, 393 n. 3 (D.N.M.1992) ("doctrines of waiver and estoppel do not apply to subject matter jurisdictional requirements and lack of subject matter jurisdiction can be raised any time, even by the court") (citations omitted).

Thus, contrary to plaintiff's arguments, "[s]ubject-matter jurisdiction . . . can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Indeed, even though the parties have diligently litigated this matter in two courts over six years, once counsel raised the question of plaintiff's status as a plan participant, this Court has an affirmative obligation to consider the matter and dismiss this action for lack of subject matter jurisdiction if jurisdiction under ERISA is found to be lacking. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court **must** dismiss the action.") (emphasis added); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004) ("[I]t is the obligation of [the] district court . . . to be alert to jurisdictional requirements.")

Next, plaintiff asserts that he was not on unpaid leave for the six months from June 1996 to January 1997 or, if he was, that he paid his contributions as required to maintain his status as an enrolled participant in the LTD plan. In support of his contention, plaintiff submitted a series of three successive declarations, the second two each purportedly correcting a typographical error in the first declaration, and intended to replace it. Dkt. ## 96, 99, 101. Defendants moved to strike these declarations as improper, as the substitute declarations made substantive changes to the original one. Dkt. # 102. In granting the motion to strike, the Court reinstated plaintiff's original declaration, filed June 1, 2009. Dkt. # 104. In this declaration, plaintiff states,

> I did discuss with my doctors going out on unpaid leave. The thought about going on unpaid leave was to address my potential plan to have surgery. I never got the surgery, so I did not go out on unpaid leave. In June 1996 I went out on a medical disability with Transamerica's approval.

Declaration of Jack Leeson, Dkt. # 96, ¶ 8. In light of the fact that plaintiff made this declaration "on information and belief" rather than personal knowledge, and did not sign it "under penalty of perjury,"

ORDER ON MOTION TO DISMISS - 6

the Court finds that this self-serving declaration does not provide cognizable evidence that plaintiff was not on unpaid leave.

On the other hand, there is ample evidence in the record, including many documents filed by plaintiff earlier in these proceedings, that he was on unpaid leave at this time. On June 24, 1996, Frank Mitchell, M.D. wrote a letter to plaintiff's employer, stating "I recommend that he take about six months off which will allow him time for his injuries to heal and allow us to deal with the medication related problems." Amended Declaration of Steven Krafchick, Dkt. # 34-8, p. 6. On September 10, 1996, neurologist Steven Singer, M.D., wrote to plaintiff's employer, stating,

> It is my impression that this patient is disabled for his present occupation because of his chronic pain and muscle spasm. He does not really have the ability to go through a whole day of work or is not able to think clearly through a whole day of work because of these issues. I do not think this is related to drug overuse and I do not think this is a simple muscle contraction or tension type of state as has been suggested by some physicians who have seen him.
> . . . .
>
> I do not know exactly what days Jack has already been off work. I know that he has been off recently and I thought this was reasonable given the nature of his problems. I am not sure that he will ever be able to return to work given his circumstances, however, I would hope that if he has a surgical procedure, he might be improved sufficiently in order to return to work activities.

Dkt. # 34-3, p. 9. Also, on September 10, 1996, plaintiff saw Andrew Cole, M.D., of Puget Sound Sports & Spine Physicians, P.S., on a referral for severe headaches. Dr. Cole noted under "work history" that "[h]e works for TransAmerica Life Annuity company. He has been on a personally-imposed medical leave of absence since 6/24/96." Dkt. # 34-3, p. 1. These documents establish that plaintiff's leave was due to his medical condition, but they do not establish that this leave was anything other than "unpaid leave." Since plaintiff did not have short-term disability coverage, unpaid leave was the only type of leave available to him. The fact that it was due to his medical condition is irrelevant to the characterization of this period as "unpaid leave" under the terms of the benefit plan.

Further, plaintiff himself repeatedly characterized his leave as "unpaid leave." According to the claim file phone logs from January 20, 1997, plaintiff made the following statements in submitting his claim:

> -in oct 1995 ee spoke with his boss that he could not handle all this, was going to go on upaid [sic] leave in jan of 1996 . . .
>
> -ee continued to work

ORDER ON MOTION TO DISMISS - 7

1        -on June 24 took unpaid leave, since he did not have STD

2        -ee then was out of work, dr mitchell suggested at that time that pain med was affecting him and he needed to get off pain meds to determine level of pain

3

4        -June 24 ee left on unpaid medical leave, dr singer was to put him on DHA protocol to remove all meds from his smx

5 Amended Declaration of Steven Krafchick, Dkt # 34-8, p. 10.

6       Among the documents submitted by plaintiff to support his disability claim was a February 5, 1997 letter to plaintiff from Herbert Gordon, DDS, stating, "You had been working, but in June of 1996, you took a leave of absence, without salary, because of the difficulties that you were having in maintaining work capacity. . . ." Dkt. # 34-3, p. 10. On February 24, 1997, plaintiff saw David Tauben, M.D., who noted "He states he began unpaid medical leave 6.96 in anticipation of surgery that was seriously contemplated, and then later declined." Dkt. # 34-3, p. 15.

12       These documents and others in the record conclusively establish that plaintiff was on unpaid leave beginning June 24, 1996, and continuing into 1997. His status as participant in the Long-Term Disability Plan when he submitted his claim in 1997, then, turns in part on whether he made monthly after-tax contributions to the Trustee to maintain his status as an enrolled member while on unpaid leave. There is no evidence in the record that he did so. Plaintiff states in his declaration that "[a]ll contributions needed to maintain My pre-disability benefits status were taken from bonus monies paid after June 1996." Declaration of Jack Leeson, Dkt. # 96, ¶ 7. As noted above, this unsworn, unnotarized declaration, made on "information and belief" cannot be recognized as evidence. In the absence of cognizable evidence that plaintiff made the monthly after-tax contributions as required, the Court must find that he did not meet this requirement.

22       Defendants further contend that even if plaintiff had made the required contributions, he did not meet the requirements for eligibility as a plan participant under the 1997 Restatement, and cannot demonstrate his standing to bring a claim under ERISA. The Court notes the relevant language in Section 3.3.5 of the 1997 Restatement, which controls the conditions under which an employee on unpaid leave may avoid suspension of participation in the LTD: that participation terminates in any case on the earliest of "[t]he date next following the end of the period (1) for which the last Employer Payment is made by an Employer on account of the Long-Term Participant's membership," or " the

ORDER ON MOTION TO DISMISS - 8

date on which he or she ceases to be an Eligible Employee." 1997 Restatement § 3.3.5, Dkt. # 08, p. 19. There is no evidence in the record regarding payments made by the employer to support plaintiff's continued participation in the LTD plan. However, in light of the finding that there is also no evidence that plaintiff made his monthly contributions to maintain his participation in the plan, the Court need not carry this analysis further.

Finally, plaintiff argues that he was a plan participant at the time he went on disability in 1997 because "he was an active employee on his last day of work June 24, 1996 and a covered employee when he took his first day off due to disability." Plaintiff's Response, Dkt. # 95, p. 4. This argument rests on a false legal premise---that disability benefits automatically vest at the moment of disability. In *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1159-61 (9th Cir.2001), the Ninth Circuit rejected this view. The court concluded that "an employee's rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do" and because vesting of welfare benefits is "an extra-ERISA commitment [such vesting] must be stated in clear and express language." *Id*. at 1160 (quotation marks omitted). Plaintiff has pointed to no such clear and express vesting language here.

Later in his argument, plaintiff acknowledges that the rule under ERISA, welfare benefits, unlike pension benefits, do not vest under the statute. Plaintiff's Response, Dkt. # 95, p. 14. Yet he fails to recognize the consequence of this for his claim. In order to assure the protection of vested pension benefits, ERISA prescribes vesting and accrual schedules and provides that an employee's right to his normal retirement benefit is "nonforfeitable." 29 U.S.C. § 1053(a). However, the ERISA statute expressly exempts employee welfare benefit plans from the sections concerned with vesting and accrual. 29 U.S.C. § 1051(1). While ERISA, in 29 U.S.C. § 1322, also guarantees the payment of "all nonforfeitable benefits," this protection is applicable only to pension, stock bonus or profit-sharing plans. 29 U.S.C. § 1321(a); 26 U.S.C. § 401(a). There is no language in ERISA which provides for the accrual of welfare benefits or guarantee that such benefits are vested or nonforfeitable. *Turner v. Local No. 302, Int'l Bhd. of Teamsters*, 604 F.2d 1219, 1225 n. 5 (9th Cir.1979). Thus plaintiff's claim that his disability benefits were vested on his last day of work in June 1996, and could not be forfeited during his unpaid leave, is without merit.

ORDER ON MOTION TO DISMISS - 9

CONCLUSION

While defendants' failure to raise the jurisdictional question earlier has led to significant delay in the resolution of this matter, as well as considerable expenditure of time by the parties as well as by two courts, defendants have not waived the defense by their tardiness. The Court has an obligation to consider the question of subject matter jurisdiction either on its own or at the request of a party made at any time. Rule 12(h)(3). Defendants have made such request, moving to dismiss on the basis that plaintiff does not have standing under ERISA to bring this action.

As set forth above, in order to have standing to bring a civil action under ERISA, a plaintiff must be a participant in or a beneficiary of an ERISA plan. *Burrey v. Pacific Gas and Electric Co,* 159 F. 3d at 392; 29 U.S.C. § 1132(a)(1)(B). The applicable statute defines a participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . " 29 U.S.C. § 1002(7). A former employee may qualify as a participant under ERISA if he has "a reasonable expectation of returning to covered employment or . . . a colorable claim to vested benefits." *Burrey*, 159 F. 3d at 392, *quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 1,01, 117 (1989).

Plaintiff has presented no evidence that he had a reasonable expectation of returning to his employment; to the contrary, he repeatedly asserted that he was permanently disabled and had no expectation of returning to work. Nor has he demonstrated that he had a colorable claim to vested benefits, as he has failed to present evidence that he maintained his status as a participant under the terms of the applicable plan.

In the absence of evidence that he was a participant in an ERISA plan, plaintiff lacks standing under § 1132(a)(1) to pursue a claim under the statute. Such standing is a prerequisite to this Court's subject matter jurisdiction under ERISA. *Curtis v. Nevada Bonding Corp.*, 53 F. 3d 1023, 1027 (9th Cir. 1995). Defendants' Rule 12(h)(3) motion to dismiss is accordingly GRANTED, and this action is DISMISSED for lack of subject matter jurisdiction.

Dated this 22 day of March, 2010.

ORDER ON MOTION TO DISMISS - 10

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 11